BROWN, J., dissenting; WALKER, J., concurring in the dissenting opinion.
This is an action to recover an overcharge on an interstate shipment of freight, and the penalty prescribed in section 2644.
After the freight had been paid, the plaintiff applied to the defendant for its rate, and correctly made up its claim of $3.75, based on the rate given.
The defendant refused to pay the claim, and the plaintiff sued to recover the sum of $3.75 and the penalty.
The defendant offered to pay $2.39, and the jury found that the overcharge was $3.56. The discrepancy between the amount claimed and the amount recovered is explained by the evidence, as follows:
Gus Leach, a witness for the plaintiff, testified that he was secretary, treasurer, and general manager of and did the ordering for the plaintiff; a corporation, and that he looked after the shipments received; that he ordered a shipment of ranges from Piquia, Ohio, which was shipped on 29 November, 1912; that the plaintiff received a bill of lading of said shipment bearing said date, and also a freight bill, which plaintiff paid, and that plaintiff filed the said bill of lading and paid freight bill with the defendant railway company, together with plaintiff's bill for (84) overcharge. Here the bill of lading was shown the witness, who testified that it was the exact copy, if not the original, and the freight bill was paid; that he filed these papers with his claim; that the shipment amounted to 1,020 pounds, and that he paid $18.03 freight; that from previous shipments he thought the freight was excessive, and he asked the railroad company to give him the rate from Piqua, Ohio, to Franklin, N.C.; that he first asked the local agent, Mr. Hames, and he could not give it, and the witness then wrote to the management of the road; that the shipment was received 12 December, 1912; and he asked for the rate on 13 December, 1912, and received answer 27 February, 1913; that Mr. Hames, the local agent, called him up over the phone and told him that the rate was $1.40 per 100 pounds, and he thereupon filed his claim for the overcharge of $3.75, which he testifies was the difference between the rate at $1.40 and what he had paid; that the claim for *Page 93 
overcharge had not been paid; that lacking two or three days, seven months had intervened between the date of filing the claim and institution of the suit; that by the Interstate Commerce Commission's schedule of rates, ranges were shipped as third class, and that the given rate of third class from Piqua, Ohio, to Cincinnati, Ohio, was 17 cents, and from Cincinnati, Ohio, to Franklin, N.C. via Tallulah Falls Railway, it was $1.23, making a total of $1.40; that before the institution of this suit the Tallulah Falls Railway Company had offered him the sum of $2.39 in settlement of the claim for overcharge; that the shipment consisted of two ranges and contents, two high closets crated, one box advertising matter, and one boxed toy range; that the advertising matter and the toy range came at a higher classification and freight rate than the ordinary range; that deducting the weight of the advertising matter and the toy range, 90 pounds, from the total weight of the shipment, 1,020 pounds, left 925 pounds on which the freight was chargeable at third-class rate, the 90 pounds being chargeable at first- or second-class rate, making the total overcharge on the basis of classification furnished by the Interstate Commerce Commission $3.56 instead of $3.75, the amount sued for; that the weight of the advertising matter and the toy range was not distinguished on the bill of lading issued by the initial carrier, (85) but that merely the gross or total weight of the shipment was given, towit, 1,020 pounds, and this also appeared from the original bill of lading which was introduced in evidence, and which bore date 29 November, 1912.
There is no controversy as to the amount of the penalty, if entitled to recover any.
There was a judgment in favor of the plaintiff for $3.56 overcharge and $100 penalty, and the defendant appealed.
The assignments of error are as follows:
First. That the court erred in allowing witness Leach, over defendant's objection, to testify that Hames, local agent of defendant, called him up over the telephone and told him the rate was $1.40 per hundred pounds, as pointed out in defendant's first exception.
Second. That the court erred in allowing the plaintiff to introduce in evidence the file of rates from the Interstate Commerce Commission certified by its secretary under the seal of the commission, as pointed out in defendant's second exception.
Third. That the court erred in allowing plaintiff to introduce the bill of lading and freight bill without introducing the balance of defendant's file, as pointed out in defendant's third exception.
Fourth. That the court erred in charging the jury that the plaintiff was entitled to recover of the defendant a penalty of $25 for the first *Page 94 
day and $5 for each succeeding day after demand made, until the sum reached the amount of $100, as pointed out in defendant's fourth exception.
Fifth. That the court erred in refusing to set aside the verdict and granting the defendant a new trial, as pointed out in defendant's fifth exception.
Sixth. That the court erred in awarding the plaintiff judgment against the defendant for the sum of $100, penalty for failure to refund overcharge, as pointed out in defendant's sixth exception, and rendering judgment for $3.56 when plaintiff sued for $3.75.
The only assignment of error relied on in the brief of the appellant is the fourth, and as to this it is contended: (1) That the act (Rev., sec. 2644) imposing a penalty for non-payment of an overcharge of freight is invalid, because it is an interference with interstate commerce. (2) That to permit a recovery of the penalty when the plaintiff has failed to sustain his claim in full would be a taking of the property of the defendant without due process.
The first exception of the defendant is disposed of by the decision inThurston v. R. R., 165 N.C. 598, and it is not necessary to consider it further.
The second presents more difficulty, but when the nature of the demand and the facts connected with the filing of the claim by the plaintiff are considered, we are of opinion the penalty can be legally enforced.
Section 2634 of the Revisal imposes a penalty for failure to pay a claim for loss or damage to property while in the possession of a common carrier, but provides that no penalty shall be recovered unless the full amount of the claim is recovered.
In proceedings under this section, the amount is uncertain and unascertained, and as the defendant has no means of determining the exact amount due, the burden is upon the plaintiff to make good his claim, before he can recover the penalty, as otherwise the carrier could be penalized for refusing to pay an unjust and excessive demand.
It was upon this ground the judgment of the Supreme Court of Arkansas was reversed in R. R. v. Wynne, 224 U.S. 354, in which the owner of property damaged filed a claim against the carrier for $500, and only demanded in his complaint and recovered $400, the Court saying: "It will be perceived that while, before the suit, the owner *Page 95 
demanded $500 as damages, which the company refused to pay, he did not in his suit either claim or establish that he was entitled to that amount. On the contrary, by the allegations in his complaint (87) he confessed, and by the verdict of the jury it was found, that his damages were but $400. Evidently, therefore, the prior demand was excessive and the company rightfully refused to pay it. And yet the statute was construed as penalizing that refusal and requiring a judgment for double damages and an attorney's fee. In other words, the application made of the statute was such that the company was subjected to this extraordinary liability for refusing to pay the excessive demand made before the suit."
These objections do not exist when the demand is for an overcharge of freight which consists, under section 2642 of the Revisal, in collecting more than the rates appearing in the printed tariff of the carrier.
The carrier knows the amount collected, and has in its own possession its tariff, fixing the legal rate, and can ascertain with exactness the amount of overcharge. It can, therefore, protect itself against an unjust demand by tender of the amount due, and thereby escape liability for the penalty.
It appears in this record that the plaintiff did not intentionally claim more than it was entitled to, and that its error in stating the amount was brought about by the conduct of the defendant in misinforming him as to its rates, and that the tender by the defendant was less than was due on any computation.
The defendant ought not to be permitted to mislead the plaintiff and induce it to file a claim for more than it can recover, and then escape liability upon the ground that the claim is excessive.
The defendant is, in our opinion, liable for the penalty. Statutes of similar import have been upheld. R. R. v. Vinegar Co., 226 U.S. 219.
No error.